NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 20, 2018[*]
Decided September 21, 2018

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-3553

| | |
|---|---|
| DONYALL WHITE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District |
| | of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:15-cv-1347-TWP-DML |
| VICKI POORE, | |
| *Defendant-Appellee*. | Tanya Walton Pratt, |
| | *Judge*. |

## O R D E R

Donyall White, an Indiana inmate, sued Vicki Poore, a health administrator at his prison, under 42 U.S.C. § 1983 for violating the Eighth Amendment in three ways: She decided that his foot pain did not qualify him for a lower bunk, she refused to refund a modest co-pay charge for an appointment with a doctor, and she supposedly did not arrange for other medical care for his pain. The district judge entered summary

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. CIV. P. 34(a)(2)(C).

judgment for Poore, reasoning that the undisputed facts showed that White received adequate attention from Poore for his pain. We agree, so we affirm.

We recount the facts in the light most favorable to White, the opponent of summary judgment. *See Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016). White suffers from chronic pain in his ankles and feet. The condition worsened in 2013 when he fell while climbing down from his top-bunk bed, hitting his head and losing some feeling in a leg. A nurse treated him that day with ice for the swelling. Three days later, White requested a bottom bunk from the Health Services Administrator, Vicki Poore, and her response led to the first issue in this case. Under prison policy, bottom-bunk passes are restricted to inmates who present any one of nine issues: (1) "Post operative state," (2) "Joint fusion," (3) "Epilepsy," (4) "Gross obesity," (5) "Gross neurological dysfunction," (6) "Fractures and sprains," (7) "Temporary illnesses," (8) "Prosthetic Limb," or (9) Over 70 years old. White does not challenge the validity of this policy. Poore reviewed White's medical record, and she determined that he did not meet any of the policy's criteria for a bottom-bunk pass.

White continued to see nurses and doctors regularly—ten times between October 2013 and February 2014—for knee and ankle pain. One doctor noted that he had "severe flat feet," so the prison ordered arch supports for White's feet. White also underwent x-rays of his feet. After examining his records, the doctors and nurses urged White to lose weight to relieve his pain.

White's pain in his feet and ankles persisted, so in April 2014 he requested more care, leading to his second issue in this case. A nurse examined him, scheduled him to see a physician, and charged him a $5 co-pay. Before White saw the doctor, he asked Poore to refund that co-pay. Poore responded that the $5 charge was proper because White's visit with the nurse was not a follow-up appointment or a visit scheduled by the medical staff. White disagreed, replying that he was not required to pay the $5 because he was in "chronic care." Poore still declined to refund the co-pay.

Medical personnel continued to treat White's pain over the next six months by giving him over-the-counter pain medication, placing him on a diet to help him lose weight, and furnishing him with the arch supports for his feet. He also received an injection for the pain in his neck, back, and legs. The third issue in this case arose after White complained to Poore that the injection worked for only two days and he wanted more pain relief. She responded that he could not get another injection immediately, but he should follow his doctors' advice to lose weight and "keep something on hand from

commissary that you can take for the pain that you have associated with your hip, leg and feet." She also encouraged White to request health care if his pain continued.

White remained dissatisfied. He filed a grievance against Poore, asserting that she disregarded his pain and that he needed to go to the hospital "to see what is really wrong." After the prison denied the grievance, he wrote to Poore again, repeating that he suffered from pain in his back, neck, legs, and feet. She offered to talk to a doctor about approving him for special orthotic shoes. Three days later, a doctor examined White, and White was fitted for the shoes, which he received four months later. Afterwards, White continued to receive care for his pain. He never interacted with Poore again, and she departed from the prison six months later.

White's next step was this suit, which ended at summary judgment for the defendants. He argued that Poore was deliberately indifferent to his pain by denying him a bottom bunk, refusing to refund the co-pay, and not getting him better treatment. The judge disagreed: Poore was not indifferent to White's request for a bottom bunk because she reasonably applied the prison's policy. The co-pay, the judge continued, had no bearing on White's receipt of medical care. Finally, the record undisputedly showed that Poore had arranged for White to receive adequate care for his pain.

On appeal, White contests the district court's entry of summary judgment. To survive summary judgment on his claim that Poore violated the Eighth Amendment, he must present evidence that would allow a reasonable jury to conclude that Poore deliberately ignored a serious health condition. *See Farmer v. Brennan*, 511 U.S. 825, 837–40 (1994); *McGee v. Adams*, 721 F.3d 474, 480–81 (7th Cir. 2013). We address each of White's issues in turn.

First, nothing in the record suggests that in addressing White's request for a bottom bunk, Poore recklessly mishandled that request. To the contrary, Poore reviewed White's medical records when he requested a bottom bunk to see if he qualified for one under the prison's policy. White does not contest the constitutionality of that policy, and no evidence suggests that Poore's conclusion (that he does not meet the policy's criteria) was wrong, let alone "blatantly inappropriate," lacking professional judgment, or a reckless disregard of his needs. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

White's second argument is that because Poore refused to refund the co-pay for medical care, she was deliberately indifferent to his pain. White apparently believes that he deserved the refund because he was eligible for chronic care, which supposedly

relieved him of a co-pay obligation. But even if he is correct about the economics, Poore's refusal to repay him the $5 is irrelevant to whether he received proper care for pain because he does not contend that the denied refund prevented him from receiving any of the medical attention that he wanted.

White's final argument is that Poore did not arrange for him to receive proper medical care when his pain persisted after his injection. We look at the entire context of his medical care. *See McGee*, 721 F.3d at 481–82 (discussing care received on multiple occasions). Before White complained to Poore, he had received x-rays of his legs, advice to lose weight, and an order for arch supports for his feet. When he complained after the injection, Poore advised him to follow the diet, use the pain relievers he had received, and continue to visit the prison's clinic. His further complaints to her led her to speak to a doctor who arranged for orthopedic shoes. The ongoing care he received from the prison's medical staff, taken together with Poore's efforts to procure additional care, do not support a reasonable inference that she was deliberately indifferent. *See McGee*, 721 F.3d at 482. Although White replies that she should have tried to *cure* his pain, not just treat it, he was not entitled to dictate the terms of otherwise reasonable care. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017); *Arnett*, 658 F.3d at 754. The district court thus correctly entered summary judgment against him.

AFFIRMED